UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TYRA GOOSBY,

         Plaintiff,

-vs-

ANDREW M. SAUL, *Commissioner of Social Security*,[1]

         Defendant.

DECISION AND ORDER

18-CV-207-CJS

## APPEARANCES

| | |
|---|---|
| For Plaintiff: | Elizabeth Ann Haungs, Esq.<br>Kenneth R. Hiller, Esq.<br>Law Offices of Kenneth Hiller, PPLC<br>6000 North Bailey Avenue, Suite 1A<br>Amherst, NY 14226<br>(716) 564-3288 |
| For the Commissioner: | Andreea Laura Lechleitner, Esq.<br>Social Security Administration<br>Office of General Counsel<br>26 Federal Plaza, Room 3904<br>New York, NY 10278<br>(212) 264-2442<br><br>Avni Dinesh Gandhi, Esq.<br>Office of the General Counsel<br>Social Security Administration<br>61 Forsyth Street, S.W., Suite 20T45<br>Atlanta, GA 30303<br>(404) 562-1085 |

## INTRODUCTION

**Siragusa, J.** This Social Security disability case is here for review pursuant to 42 U.S.C. § 405(g) from the Commissioner's decision denying supplemental security income benefits. Now before the Court are Plaintiff's motion for judgment on the pleadings, filed on November 14, 2018, ECF No. 11, and the Commissioner's cross-motion for judgment on the pleadings,

---

[1] The president nominated Andrew M. Saul to be Commissioner of Social Security and the Senate confirmed his appointment on June 4, 2019. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

filed on January 14, 2019, ECF No. 13. For the reasons stated below, the Court grants Plaintiff's motion and remands the case for a new hearing.

## BACKGROUND

Plaintiff filed an application for supplemental security income benefits under Title XVI of the Social Security Act on February 25, 2014. The Social Security Administration denied her claim initially on July 10, 2014, and she requested and was granted a hearing before an Administrative Law Judge ("ALJ") on August 15, 2016. The hearing was conducted via video conference, with the claimant in West Seneca, New York, and the ALJ in Alexandria, Virginia. Plaintiff was represented by Kelly Laga, Esq. at the hearing. The ALJ issued an unfavorable decision on September 28, 2016, and Plaintiff appealed to the Social Security Administration's Appeals Council. The Appeals Council denied her appeal on December 7, 2017, making the ALJ's decision the Commissioner's final decision. Plaintiff filed her complaint in this Court through counsel on February 26, 2018. ECF No. 1.

## THE ALJ'S DECISION

The ALJ's assessment of Plaintiff's residual functional capacity ("RFC") is contained in pages 21 through 24 of the Record. The ALJ first summarized Plaintiff's report of her functional abilities, which report she signed on May 15, 2014. In that report, Plaintiff complained of panic attacks and depression and, as a result, "[s]he stated she does not go out much . . . ." R. 22.[2] She also stated that she frequently "wants to stay in bed all the time." *Id*. The ALJ then summarized Plaintiff's hearing testimony in which she testified that she takes care of her husband who is disabled due to severe rheumatoid arthritis and chronic obstructive pulmonary disease. *Id*. She also testified that she smoked marijuana once a week, cares for her grandson for an hour every month, cleans when she feels like it, and experiences

---

[2] Reference to the Record on Appeal, filed on August 15, 2018, ECF No. 8.

paranoia when she goes out and that she hallucinates, but that medications help her. The ALJ reviewed the medical evidence and after analyzing all the evidence, determined Plaintiff was capable of a full range of work at all exertional levels, but that she was limited to performing simple, routine and repetitive tasks, but not at a production rate or quota; that she is limited to simple instructions and simple work-related decision making, "occasional interaction with supervisors, coworkers, and the public," and that she "cannot do jobs requiring teamwork or tandem tasks" and "must work in a static work environment, with few changes in the work setting." R. 21.

## DISCUSSION

Plaintiff contends the following errors were committed by the Commissioner: (1) "The ALJ's Finding that Plaintiff Could Occasionally Interact With Co-Workers and the Public is Unsupported by Substantial Evidence, Warranting Remand"; (2) "The ALJ Improperly Rejected the Well Supported Opinion of Plaintiff's Mental Health Counselor, Warranting Remand"; (3) "The ALJ Failed to Provide a Sufficient Evaluation of the Credibility of Plaintiff's Subjective Complaints, Warranting Remand." Pl.'s Mem. of Law 13, 17 & 21, Nov. 14, 2018, ECF No. 11-1.

### The ALJ's RFC Determination

> Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.
>
> * * *
>
> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an

equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996) (footnote omitted).

The Court now turns to Plaintiff's arguments regarding the ALJ's RFC determination that Plaintiff was capable of "occasional interaction with supervisors, coworkers, and the public." R. 21. Plaintiff points to the Record which she argues shows greater limitations than "occasional interaction" would imply. Janine Ippolito, Psy.D., performed a consultative examination on June 24, 2014. She wrote in the Current Functioning portion of her report: "The claimant states that since her son's murder in 10/12, she has been experiencing problems with depressed mood, tearfulness, poor appetite, poor sleep, irritability and anger, and a tendency to withdraw from others. In the Medical Source Statement portion of her report, Dr. Ippolito wrote:

> The claimant presents as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions with no evidence of limitation. She can relate adequately with others with moderate limitations. She can appropriately deal with stress with moderate-to-marked limitations. These limitations are due to her current emotional distress and suspected cognitive deficits.

R. 257. The ALJ gave Dr. Ippolito's opinion some weight, and noted that the doctor's "individual descriptions regarding the extent of the Claimant's limitations undermine her final conclusion . . . ." R. 23. The Commissioner points out that Dr. Ippolito found Plaintiff "was cooperative and her manner of relating, social skills, and overall presentation were adequate...." Comm'r Mem. of Law 19, Jan. 14, 2019, ECF No. 13-1. The ALJ noted that

Plaintiff reported to Dr. Ippolito and other "mental health providers" that she "socializ[ed] with her neighbors and mother." R. 20. From this, the Commissioner concludes that the ALJ's limitation of "occasional interaction with supervisors, coworkers, and the public," accounted for what the ALJ classified as "moderate difficulties" in social functioning. R. 20; Comm'r Mem. of Law 18.

Plaintiff responds in her memorandum that the ALJ's conclusion concerning "occasional interaction" was outcome determinative in light of the vocational expert's opinion that "significant limitations in dealing with co-workers in particular could actually preclude work in the national economy." Pl.'s Mem. of Law 13; R. 53. The questions posed to the vocational expert by Plaintiff's counsel, and responses by the vocational expert on this issue are as follows:

> Q. Okay. So, if we have the individual during even an occasional basis what interaction they get, especially with supervisors, being inappropriate where they [sic] could not maintain appropriate behavior on a consistent basis with any interaction that they [sic] get. Especially if they [sic] were given instruction from a supervisor. Could they [sic] maintain the jobs that you cited? Or a job in general?
>
> A. No, ma'am.
>
> Q. Just double check. Would that be something similar if they [sic] also could not, for what interaction they have, get along with coworkers as well just by being near them if they [sic] could not handle even pleasantries or were distracting to others around them [sic]?
>
> A. Yes, it would be the same answer.

R. 53. This exchange alerted the ALJ to the necessity of thoroughly exploring Plaintiff's ability to interact with others in the *work* setting.

Also cited by Plaintiff is the non-examining opinion of M. Totin, whom the Commissioner describes as "a state agency psychologist . . . ." Comm'r Mem. of Law 4.³ On the issue of Plaintiff's ability to interact with others in the work setting, Dr. Totin wrote:

> Based on the evidence in file the claimant's ability to deal with co-workers and the public would be somewhat reduced, but adequate to handle brief and superficial contact. Similarly, his [sic] ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting. She can also perform simple tasks.

R. 60. Regarding Dr. Totin's opinion, the ALJ wrote: "Dr. Totin did not adequately consider the impact of the Claimant's PTSD, anxiety, paranoia, and tendency to isolate on her ability to function." R. 23. Thus, the ALJ concluded that Dr. Totin "slightly *understated*" Plaintiff's "somewhat reduced" ability to handle interactions with coworkers and the public only during "brief and superficial contact," and Plaintiff's "reduced" ability to "tolerate and respond appropriately to supervision." The AJL gave Dr. Totin's opinion "some weight." *Id*.

Finally, Plaintiff cites to evidence from Rebeka Chen, a Mental Health Certified Practitioner (a non-medical source). She is Plaintiff's counselor and, as Plaintiff argues, "provided the most detailed medical opinion in evidence, supportive of finding of disability." Pl.'s Mem. of Law 17; R. 543–47. Horizon Health Services, Ms. Chen's employer, had been working with Plaintiff starting in November 2013. Ms. Chen completed her Mental Residual Functional Capacity Questionnaire on May 6, 2016. R. 543. She noted that Plaintiff "is continuing to experience symptoms of depression, auditory hallucinations, panic attacks, and hyper-vigilance." R. 543. Ms. Chen indicated that Plaintiff would be "[u]nable to meet competitive standards" in these mental ability categories: maintain attention for two-hour segment; complete normal workday and workweek without interruptions from psychologically

---

³ The ALJ identifies her as "Martha Totin, Psy.D." R. 23.

based symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; or deal with normal work stress. R. 545. The ALJ accorded her opinion "little weight." R. 24.

Plaintiff testified during the ALJ hearing that:

> I could go from zero to a hundred within 10 minutes. I can laugh and talk with you for a minute, but if somebody say [sic] the wrong thing towards me then I just flip out. I be [sic] ready to really hurt people. I have thought about suicide on several occasions. It's just been very hard for me to go through the motions that I'm going through because of the loss of my son.
>
> * * *
>
> Because it's hard for me sometimes to live a daily normal life knowing that the man that killed my son is still out there. And that's hard to live with.
>
> * * *
>
> And I'm not—I don't want to hurt anyone. You know? I just want the person that killed my son to be caught, that's all.

R. 41, 42, 44 (examination by Plaintiff's attorney).

Plaintiff cites to this Social Security Ruling: *Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15 (S.S.A. 1985). That Ruling states in pertinent part as follows:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

*Id.* Plaintiff contends that substantial evidence in the record does not support the ALJ's conclusion that she meets the criterium of being able to respond appropriately to supervision, coworkers, and usual work situations, and that the ALJ's reliance on Plaintiff's ability to

respond appropriately in a *social* setting does not mean she is capable of doing the same in a work setting. *See, e.g., Smith v. Colvin*, No. 1:16-CV-00295 (MAT), 2017 WL 489701, at *3 (W.D.N.Y. Feb. 7, 2017) ("a limitation in interacting with the public is not equivalent to a limitation interacting with coworkers or supervisors."); *and Nickens v. Colvin*, No. 14-140, 2014 WL 4792197, at *2 (W.D. Pa. Sept. 23, 2014) ("The public, supervisors, and co-workers are distinct groups, and are separately addressed on the Defendant's mental residual capacity forms. Thus, limitations on two of these types of interactions in the RFC does not account for limitations on the third.").

It was vitally important for the ALJ to have substantial evidence supporting his conclusion that Plaintiff could respond appropriately to coworkers, supervisors, and the public. In this record, medial sources describe Plaintiff's ability in this regard as "adequate to handle brief and superficial contact" (Dr. Totin, R. 60); and that she is able to "relate adequately with others with moderate limitations" (Dr. Ippolito, R. 257). Because the ALJ used Plaintiff's ability to relate socially with neighbors, family, and friends as a basis for reinterpreting the medical source opinions about her ability to relate to coworkers, supervisors, and the public, the Court finds that substantial evidence does not support his finding that Plaintiff is capable of occasional interaction with supervisors, coworkers, and the public.

## CONCLUSION

The Court finds that the ALJ's mental RFC determination is not supported by substantial evidence. Accordingly, the Court grants Plaintiff's motion for judgment on the pleadings, ECF No. 11, and denies the Commissioner's motion, ECF No. 13. The Commissioner's decision is reversed pursuant to the fourth sentence of 42 U.S.C. § 405(g)

and this matter is remanded to the Commissioner for a new hearing. The Clerk will close the case.

DATED:     August 28, 2019
               Rochester, New York

<u>/s/ Charles J. Siragusa</u>
HON. CHARLES J. SIRAGUSA
United States District Judge